IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PROTICA, INC.                     )
                                  )
        Plaintiff and             )    Civil Action
                                  )    No. 2011-cv-01105
     v.                           )
                                  )
iSATORI TECHNOLOGIES, LLC         )
                                  )
        Defendant                 )

                        *       *       *

APPEARANCES:

    SEAN P. MAHONEY, ESQUIRE
    FREDERICK E. BLAKELOCK, ESQUIRE
        On behalf of Plaintiff

    J. BRUCE McKISSOCK, ESQUIRE
    JAMES G. LARE, ESQUIRE
    ANGELINE PANEPRESSO, ESQUIRE
        On behalf of Defendant

                        *       *       *

                    O P I N I O N

JAMES KNOLL GARDNER
United States District Judge

        This matter is before the court on Plaintiff's Motion

to Dismiss Count IV of Defendant's Amended Counterclaim Pursuant

to Fed.R.Civ.P. 12(b)(6), which motion was filed by plaintiff

Protica, Inc.[1] on June 30, 2011.

        For the following reasons, I grant Protica's motion to

dismiss and dismiss Count IV of iSatori's Amended Counterclaim.

---

        [1]     Plaintiff Protica, Inc. will be referred to in this Opinion as
"Protica" unless its full name appears in a document title.  Defendant iSatori
Technologies, LLC will be referred to in this Opinion as "iSatori" unless its
full name appears in a document title.

Specifically, I grant Protica's motion and dismiss Count IV of iSatori's Amended Counterclaim for two reasons. First, iSatori's Amended Counterclaim fails to state a claim for fraudulent concealment because, although it asserts that Protica had a non-contractual duty to disclose information to iSatori, it fails to plead any non-contractual basis of Protica's alleged duty to disclose.  Second, I grant Protica's motion to dismiss and dismiss Count IV of the Amended Counterclaim because iSatori's claim of fraudulent concealment is barred by Pennslyvania's economic loss doctrine.

<u>JURISDICTION</u>

Jurisdiction in this case is based on diversity of citizenship pursuant to 28 U.S.C. § 1332.

<u>VENUE</u>

Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to Protica's claims and iSatori's counterclaims allegedly occurred within this judicial district.

<u>PROCEDURAL HISTORY</u>

Protica initiated this civil action by filing a Complaint against iSatori on February 15, 2011.  On April 1, 2011, pursuant to a stipulation of the parties, iSatori filed an

Answer.  The Answer of iSatori contained Affirmative Defenses and
a Counterclaim.[2]

On May 20, 2011 Protica filed Plaintiff's Motion to
Dismiss Count IV and Count V of Defendant's Counterclaim Pursuant
to Fed.R.Civ.P. 12(b)(6).  A stipulation approved by Order dated
June 10, 2011 and filed June 13, 2011, gave iSatori until
June 20, 2011 to respond to Protica's motion to dismiss Counts IV
and V of the Counterclaim.

On June 20, 2011 iSatori filed its Amended Answer.  The
Amended Answer also included Affirmative Defenses and a
Counterclaim ("Amended Counterclaim").[3]  By Order dated June 23
and filed June 24, 2011, I dismissed Protica's motion to dismiss
Counts IV and V of iSatori's Counterclaim as moot because iSatori
filed an Amended Counterclaim.

On June 30, 2011, Protica filed Plaintiff's Motion to
Dismiss Count IV of Defendant's Amended Counterclaim Pursuant to

---

[2]     Answer at pages 11-12.  iSatori's Counterclaim contained five
counts which alleged the following: Count I, breach of contract; Count II,
breach of express warranty; Count III, breach of implied warranties; Count IV,
fraudulent concealment; and Count V, engaging in "intentional, reckless, and
particularly egregious conduct" by fraudulently concealing certain
information.  (Amended Counterclaim at pages 15-20.)

[3]     The document iSatori filed is titled "Amended Answer", and the
paragraphs containing iSatori's affirmative defenses are delineated by a
section heading "Affirmative Defenses".  A similar section heading
"Counterclaim" delineates the paragraphs containing iSatori's Counterclaim.
The Counterclaim paragraphs are numbered 1 through 61.  For the purposes of
this Opinion, I refer to these paragraphs as iSatori's "Amended Counterclaim".

Fed.R.Civ.P. 12(b)(6).[4]  On July 25, 2011, iSatori Technologies, LLC's Response to Plaintiff's Motion to Dismiss Count IV of the Counterclaim was filed.[5]

On August 3, 2011 Protica filed Plaintiff's Memorandum of Law in Reply to Defendant's Opposition to Plaintiff's Motion to Dismiss with leave of court.  On August 15, 2011 defendant filed iSatori Technologies, LLC's Surreply in Support of Its Opposition to Plaintiff's Motion to Dismiss Count IV of the Counterclaim, also with leave of court.

Having been fully briefed, Plaintiff's Motion to Dismiss Count IV of Defendant's Amended Counterclaim Pursuant to Fed.R.Civ.P. 12(b)(6) is ripe for disposition.  Hence this Opinion.

<u>STANDARD OF REVIEW</u>

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  A 12(b)(6) motion requires the court to examine the sufficiency of the complaint.  <u>Conley v. Gibson</u>, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957) (abrogated in other respects by

---

[4]    Together with its motion, Protica filed a Memorandum of Law in Support of Plaintiff's Motion to Dismiss Count IV of Defendant's Amended Counterclaim Pursuant to Fed.R.Civ.P. 12(b)(6).

[5]    Together with its response, iSatori filed a Memorandum of Law in Support of iSatori Technologies, LLC's Response to Plaintiff's Motion to Dismiss Count IV of the Counterclaim.

Bell Atlantic Corporation v. Twombly, 550 U.S. 544,
127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  Generally, in ruling on
a motion to dismiss, the court relies on the complaint, attached
exhibits, and matters of public record, including other judicial
proceedings.  Sands v. McCormick, 502 F.3d 263, 268 (3d. Cir.
2008).

    Except as provided in Federal Rule of Civil
Procedure 9, a complaint is sufficient if it complies with
Rule 8(a)(2), which requires "a short and plain statement of the
claim showing that the pleader is entitled to relief."
Fed.R.Civ.P. 8(a)(2).  Rule 8(a)(2) "[does] not require
heightened fact pleading of specifics, but only enough facts to
state a claim to relief that is plausible on its face."  Twombly,
550 U.S. at 570, 127 S.Ct. at 1974, 167 L.Ed.2d at 949.[6]

    In determining whether a plaintiff's complaint is
sufficient, the court must "accept all factual allegations as
true, construe the complaint in the light most favorable to the

---

[6]    The Opinion of the United States Supreme Court in Ashcroft v.
Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1953, 173 L.Ed.2d 868, 887 (2009), states
clearly that the "facial plausibility" pleading standard set forth in Twombly
applies to all civil suits in the federal courts.

       Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  This
showing of facial plausibility then "allows the court to draw the reasonable
inference that the defendant is liable for the misconduct alleged," and that
the plaintiff is entitled to relief.  Fowler, 578 F.3d at 210 (quoting Iqbal,
556 U.S. at ___, 129 S.Ct. at 1949, 173 L.Ed.2d at 884).

       As the Supreme Court explained in Iqbal, "[t]he plausibility
standard is not akin to a 'probability requirement,' but it asks for more than
a sheer possibility that the defendant acted unlawfully."  Iqbal, 556 U.S.
at ___, 129 S.Ct. at 1949, 173 L.Ed.2d at 884.

plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief." Fowler, 578 F.3d at 210 (citing Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).

Although "conclusory or bare-bones allegations will [not] survive a motion to dismiss," Fowler, 578 F.3d at 210, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Phillips, 515 F.3d at 231.  Nonetheless, to survive a 12(b)(6) motion, the complaint must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." Id. (quoting Twombly, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940) (internal quotations omitted).

The court is required to conduct a two-part analysis when considering a Rule 12(b)(6) motion.  First, the factual matters averred in the complaint, and any attached exhibits, should be separated from legal conclusions asserted therein. Fowler, 578 F.3d at 210.  Any facts pled must be taken as true, and any legal conclusions asserted may be disregarded. Id. at 210-211.  Second, the court must determine whether those factual matters averred are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 211 (quoting Iqbal, 556 U.S. at __, 129 S.Ct. at 1950, 178 L.Ed.2d at 884).

Ultimately, this two-part analysis is "context-specific" and requires the court to draw on "its judicial experience and common sense" to determine if the facts pled in the complaint have "nudged [plaintiff's] claims" over the line from "[merely] conceivable [or possible] to plausible."  Iqbal, 556 U.S. at __, 129 S.Ct. at 1949-1950, 178 L.Ed.2d at 884-885. A well-pleaded complaint may not be dismissed simply because "it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Twombly, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940-941.

## FACTS

Based upon iSatori's averments in its Amended Counterclaim, which I am required to accept as true under the foregoing standard of review when considering Protica's motion to dismiss, the pertinent facts are as follows.

Plaintiff Protica, Inc. is a Delaware corporation which has its principal place of business in Whitehall, Pennsylvania.[7]

Defendant iSatori Technologies, LLC is a Colorado corporation which has its principal place of business in Colorado.[8]  iSatori is in the business of selling Hardcore

---

[7]     Amended Counterclaim at ¶ 2.

[8]     Id. at ¶ 1.

Energize Bullet, which is a "liquid, ready-to-drink, energy-type product" and "packaged in a 2.9 fluid-ounce vial."[9]  Hardcore Energize Bullet was sold in retail stores across Canada[10] and in July 2009 was the number-one selling health item in 7-Eleven stores in Canada.[11]

Although iSatori marketed the Hardcore Energize Bullet to retail stores, Protica actually produced the "energy-type, vial-filled drinks" pursuant to a Private Label Manufacturing and Supply Agreement ("Agreement") between iSatori (the "Purchaser") and Protica (the "Supplier").  The Agreement became effective October 28, 2007 and Protica has supplied the energy-type, vial-filled drink to iSatroi since that date.[12]

On July 4, 2009 Health Canada, the federal department responsible for health matters in Canada, issued a warning advising customers not to buy or use Hardcore Energy Bullet "because a vial of the product was subject to tampering" and a "foreign object" was inserted.[13]

On July 5, 2009 the United States Food and Drug Administration ("FDA") notified customers that Protica had

---

[9]    Amended Counterclaim at ¶¶ 12, 15.

[10]   Id. at ¶ 15.

[11]   Id. at ¶ 24.

[12]   Id. at ¶¶ 7-10.

[13]   Id. at ¶ 13.

undertaken a voluntary recall of its products marketed under the IDS Sports New Whey brand and the iSatori Hardcore Energize Bullet brand.[14]   The FDA alert indicated that a utility knife blade was found in one of the 2.9-ounce vials of Hardcore Energize Bullet and a similar container of IDS Sport's New Whey product.[15]   The FDA notification warned customers not to use Hardcore Energize Bullet lots 1961, 1962, and 1974 ("Blue Rage" flavor) and lot 1953 ("Black Rush" flavor).[16]

July 2009 was not the first time that Protica knew that utility knife blades were present or were found in its products.[17]   Specifically, Protica was aware as early as February 2009 that utility knife blades were found in some of its products, which had been manufactured for IDS Sports under a private label agreement and then sold as the New Whey brand product.   In February 2009 IDS Sports voluntarily recalled two lots of New Whey when its routine quality control inspection revealed a utility knife blade in a product supplied to IDS Sports by Protica.[18]

---

[14]     Amended Counterclaim at ¶ 16.

[15]     Id. at ¶ 17.

[16]     Id. at ¶ 18.

[17]     Id. at ¶ 20.

[18]     Id. at ¶ 21.

iSatori avers that Protica failed to safeguard the products at its production facility and that Protica's failure to safeguard permitted a disgruntled employee to randomly place utility knife blades in its product containers.[19]

iSatori avers that Protica intentionally "withheld this information from iSatori, unnecessarily exposing iSatori's business and reputation to grave harm and substantial losses."[20]

Protica's July 2009 recall "destroyed the market" for iSatori's Hardcore Energize Bullet, "causing iSatori to lose profits, market share, and incur severe and potentially irreparable damages to its reputation and goodwill."[21]

### AMENDED COUNTERCLAIM

The Amended Counterclaim contains four counts.  Count I alleges breach of contract against Protica.  Specifically, iSatori alleges that Protica breached the Agreement by (A) failing to adhere to "Good Manufacturing Practices (GMP) standards", which failure permitted the blades to be placed in Protica's product; and (B) failing to assume responsibility for the July 2009 recall of Hardcore Energize Bullet.[22]

---

[19]    Amended Counterclaim at ¶ 22.

[20]    Id. at ¶ 23.

[21]    Id. at ¶ 25.

[22]    Id. at ¶¶ 29-30, 34.

Count II alleges that the presence of a utility knife blade in products manufactured and supplied by Protica constitutes a breach of Protica's express warranty that "[t]he Products shall be manufactured in accordance with Good Manufacturing Practices ('GMP') standards".[23]

Count III alleges that Protica breached the implied warranties of merchantability[24] and fitness for a particular purpose.[25]

Finally, Count IV alleges fraudulent concealment against Protica.  iSatori alleges that Protica made a decision not to disclose the February 2009 New Whey recall and the information it possessed about the possible presence of utility knife blades in Protica products which might have been purchased by iSatori under the Agreement.[26]

According to iSatori, "Protica engaged in intentional, reckless, outrageous, and particularly egregious conduct when it fraudulently concealed from and failed to disclose to iSatori that there was a reasonable likelihood that certain Products that Protica manufactured and shipped to iSatori contained utility

---

[23]    Amended Counterclaim at ¶¶ 39-41.

[24]    Id.at ¶ 46.

[25]    Id. at ¶ 49.

[26]    Id. at ¶ 54.

knife blades."[27]  Protica seeks dismissal of this final count,
Count IV.

## DISCUSSION

### Fraudulent Concealment

Protica contends that iSatori's fraudulent concealment
tort claim cannot form the basis of recovery in this case because
such a claim cannot exist absent a duty to disclose, which
iSatori has not plead sufficiently.[28]

Under Pennsylvania law, which the parties agree is
applicable to this action, the elements of fraud, or intentional
misrepresentation are:

> (1) a representation; (2) which is material to the
> transaction at hand; (3) made falsely, with
> knowledge of its falsity or recklessness as to
> whether it is true or false; (4) with intent of
> misleading another into relying on it;
> (5) justifiable reliance on the misrepresentation;
> and (6) the resulting injury was proximately
> caused by the reliance.

Presbyterian Medial Center v. Budd, 832 A.2d 1066, 1072
(Pa.Super.Ct. 2003)(citing Gibbs v. Ernst, 538 Pa. 193, 207,
647 A.2d 882, 889 (Pa. 1994)).

The Supreme Court of Pennsylvania has stated that
"[t]he tort of intentional non-disclosure has the same elements
as intentional misrepresentation 'except in the case of

---

[27]     Amended Counterclaim at ¶ 57.

[28]     Memorandum of Law in Reply at page 1-2.

intentional non-disclosure, the party intentionally conceals a material fact rather than making an affirmative misrepresenta- tion.'" <u>Bortz v. Noon</u>, 556 Pa. 489, 729 A.2d 555 (Pa. 1999)(<u>quoting</u> <u>Gibbs</u>, 538 Pa. at 207, 647 A.2d. at 889).

Here, iSatori claims that Protica intentionally concealed the fact that it had voluntarily recalled two lots of New Whey brand protein drink when IDS Sports' quality assurance procedure revealed the presence of a utility knife blade in a container of the product supplied by Protica.[29]

Under Pennsylvania law, before failure to speak or disclose information can constitute actionable fraud, the party charged must have a duty to speak or disclose.  Absent a duty to speak or disclose, the concealment of certain facts cannot constitute fraud.  <u>WP 851 Associates, L.P. v. Wachovia Bank, N.A.</u>, 2008 U.S.Dist. LEXIS 2211, at *28 (E.D.Pa. January 11, 2008)(Pratter, J.).

Moreover, a duty to disclose does not typically arise unless there is a confidential or fiduciary relationship between the parties, and a "normal business relationship between sophisticated commercial entities...does not form the basis for such a relationship unless 'one party surrenders substantial control over some portion of its affairs to the other.'" <u>Id</u>. at *28-29 (<u>quoting</u> <u>Drapeau v. Joy Technologies, Inc.</u>,

---

[29]    Amended Counterclaim at ¶¶ 21, 52.

447 Pa.Super. 560, 573, 670 A.2d 165, 172 (Pa.Super.Ct. 1996) (Beck, J. concurring)).

In Gibbs, the Supreme Court of Pennsylvania cited the decision of the Superior Court of Pennsylvania in Sevin v. Kelshaw, 417 Pa.Super. 1, 9, 611 A.2d 1232, 1236 (Pa.Super.Ct. 1992), for the proposition that "mere silence is not sufficient to prove fraud absent a duty to speak" and contrasted the relationship between an adoption agency and an adopting parent -- which "is, or should be, one of trust and confidence" -- with "a business arrangement in which two parties to a transaction may maintain silence in order to negotiate the stronger position". Gibbs, 538 Pa. at 215, 647 A.2d. at 893. The Gibbs Court stated that the former differs significantly from the latter and that the parties to the business arrangement are under no obligation to divulge information which may weaken their bargaining position. Id.

In Count IV of its Amended Counterclaim, iSatori asserts, in a conclusory manner, that "separate and apart from Protica's contractual obligation to use GMP standards and supply Products to iSatori for resale, Protica has a duty to warn and inform iSatori of the likelihood that utility knife blades were present in random vials of the Products that Protica supplied to iSatori."[30] After expressly alleging that Protica's duty to

---

[30]    Amended Counterclaim at ¶ 51.

- 14 -

disclose was "separate and apart" from the parties' contract, iSatori fails to aver the alleged non-contractual basis for Protica's duty to disclose the February 2009 New Whey recall.[31]

Because iSatori has not plead the source of Protica's alleged duty to disclose the fact that it voluntarily recalled two lots of New Whey brand protein drink after the discovery of a utility knife in the product supplied by Protica to another company, and because Protica's duty to speak or disclose is a threshold requirement for iSatori to state a fraudulent concealment claim under Pennsylvania law, I dismiss iSatori's fraudulent concealment claim for failure to aver facts which support a reasonable inference that Protica had a non-contractual duty to disclose the February 2009 voluntary recall of two lots of New Whey to iSatori.

<u>Economic Loss Doctrine</u>

Protica contends that Count IV of the Amended Counterclaim fails to state a claim of fraudulent concealment upon which relief may be granted and, therefore, should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).[32]  Specifically, Protica contends that iSatori's fraudulent concealment claim is

---

[31]     <u>See</u> Amended Counterclaim at ¶¶ 51-61.

[32]     Memorandum of Law in Support at page 6.

barred by both the gist-of-the-action doctrine, and the economic loss doctrine.[33]

Under Pennsylvania law, the economic loss doctrine prohibits a party from recovering in tort economic losses to which the party's entitlement flows only from a contract. Werwinski v. Ford Motor Company, 286 F.3d 661, 671 (3d Cir. 2002)(internal quotations and citation omitted).  Claims alleging economic loss alone are appropriately brought as breach of contract or warranty claims rather than as tort claims.  Knit With v. Knitting Fever, Inc., 2009 U.S.Dist. LEXIS 98217, at *13-14 (E.D.Pa. October 20, 2009)(Buckwalter, S.J.).  When a claim is essentially one of "failed economic expectations, i.e. expectations that the product would perform in the manner warranted, tort recovery is inappropriate."  Id. at *14.

The United States Court of Appeals for the Third Circuit, discussing Pennsylvania law, has stated that "contract theories such as breach of warranty are specifically aimed at and perfectly suited to providing complete redress in cases involving...economic losses" alone, where no personal injury or injury to other property is alleged.  Werwinski, 286 F.3d at 671 (quoting REM Coal Company v. Clark Equipment Company,

---

[33]     Amended Counterclaim at pages 7-11.

386 Pa.Super. 401, 404, 563 A.2d 128, 129 (Pa.Super.Ct. 1989) (en banc)).[34]

Although the Opinion of the Superior Court of Pennsylvania in REM Coal addressed the economic loss doctrine as applied in a tort action alleging negligence and strict liability claims, in Werwinski, the United States Court of Appeals for the Third Circuit addressed the application of the economic loss doctrine to intentional tort claims, specifically fraudulent concealment.  Werwinski, 286 F.3d at 671-682.[35]

In Werwinski, individual automobile purchasers brought a putative class action against the Ford Motor Company concerning allegedly defective components installed in Ford vehicles between 1990 and 1995.  Specifically, the individual purchasers alleged breach of express warranty, breach of implied warranty, fraudulent concealment, and violation of Pennsylvania's consumer protection statute.  Id. at 663.

As the basis for their fraudulent concealment claims, the individual consumers alleged that Ford was aware of the

---

[34]     In REM Coal, an en banc panel of the Superior Court of Pennsylvania held that negligence and strict liability theories do not apply in an action between commercial enterprises involving a product that malfunctions where the only resulting damage is to the product itself and no personal or other property damage results.  386 Pa.Super. at 412-413, 563 A.2d at 134.

[35]     In the absence of contrary authority from the United States Court of Appeals for the Third Circuit or the Supreme Court of Pennsylvania concerning the applicability of the economic loss doctrine to intentional fraud claims between two commercial parties to a contract, I am bound by and will follow the decision of the Third Circuit in the Werwinski case.

alleged defects as early as 1990 and had done several product redesigns to rectify the defects.  The purchasers alleged that Ford intentionally concealed this information from them.  Id. at 664.

The individual purchasers alleged that they had experienced transmission failure and sustained substantial repair costs as a result of the alleged defects.  Importantly, the individual purchasers did not allege that the defects had caused any personal injury or damage to property other than the vehicle's transmission.  See id.

Ford removed the case from the Court of Common Pleas of Philadelphia County, Pennsylvania to the United States District Court for the Eastern District of Pennsylvania, and then filed a motion for judgment on the pleadings.  The district court granted the motion and dismissed the fraudulent concealment claim pursuant to Pennsylvania's economic loss doctrine.  The individual purchasers appealed.  Id. at 665.

On appeal, the Third Circuit Appeals Court affirmed the district court's dismissal of the fraudulent concealment claim. Specifically, the Third Circuit affirmed the district court's ruling that Pennsylvania's economic loss doctrine applied to the intentional tort claim of fraudulent concealment asserted by the individual purchasers.  Id. at 680-681.

However, the Third Circuit Appeals Court in Werwinski did not hold that the economic loss doctrine applied to, and barred any fraudulent concealment claim between, parties in contractual privity. Werwinski, 286 F.3d at 676; Wulf v. Bank of America, N.A., 798 F.Supp.2d 586, 595-596 (E.D.Pa. 2011) (McLaughlin, J.)(adopting Opinion of Hey, M.J.); Ferki v. Wells Fargo Bank, National Association, 2010 WL 5174406, at *10 (December 20, 2010)(Buckwalter, S.J.). Specifically, the Third Circuit predicted that the Supreme Court of Pennsylvania would not adopt a blanket intentional-fraud exception to the economic loss rule. Werwinski, 286 F.3d at 680-681.

Nonetheless, recognizing "that Pennsylvania state courts have exhibited a 'lack of hospitality to tort liability for purely economic loss'", id. at 680 (citation omitted), the Third Circuit predicted that the Supreme Court of Pennsylvania would recognize a limited exception to the economic loss doctrine's application where fraud is alleged between parties to a contract. See Id. at 676, 678, and 681. This exception would permit a claim of intentional fraud against a contractual counter-party only if the fraud were "extraneous to the contract" and not "interwoven with the breach of contract." Wulf, 798 F.Supp.2d at 595 (quoting Werwinski, 286 F.3d at 676).

Thus, the critical question here is whether iSatori's fraudulent concealment claim is extraneous to, and arose

independent of, iSatori's Agreement with Protica.  <u>Wulf</u>,
798 F.Supp.2d at 596; <u>see</u> <u>Ferki</u>, 2010 WL 5174406, at *11.

    If the terms of a contract must be relied on or
interpreted in order to determine whether or not a statement or
omission is a misrepresentation, then the fraud claim based on
the alleged misrepresentation is not independent of the contract.
<u>See</u> <u>Wulf</u>, 798 F.Supp.2d at 597.  A failure-to-inform claim is not
independent of a contract where no duty to inform would have
arisen but for the contract.  <u>Sarsfield v. Citimortgage, Inc.</u>,
707 F.Supp.2d 546, 553 (W.D.Pa. 2010).  Moreover, "fraudulent
representations concerning a party's performance of a contract
are interwoven with the terms of the contract."  <u>Ferki</u>,
2010 WL 5174406, at *10.

    Here, iSatori does not allege fraud in what was said by
Protica, but rather what was *not* said.  Specifically, iSatori
alleges that Protica wrongfully withheld from iSatori the fact
that two lots of IDS Sports New Whey were voluntarily recalled by
Protica when IDS Sports' quality assurance inspection revealed a
utility knife blade in a container of product supplied to IDS
Sports by Protica.[36]

    Turning the alleged misrepresentation by omission into
an affirmative statement, iSatori alleges that Protica
effectively communicated the message that no utility knife blades

---

[36]    Amended Counterclaim at ¶¶ 51-54.

were found in product supplied by Protica to another customer, and that Protica did not voluntarily recall two lots of product supplied to another customer because that customer found a utility knife blade in one of Protica's products.[37]

The information which iSatori alleges to have been fraudulently concealed by Protica concerns the nature and quality -- particularly, the uncontaminated and safe character -- of the product which Protica supplies to iSatori under the parties' Agreement.  Moreover, while iSatori makes the conclusory assertion that Protica had a duty to disclose the information to iSatori which was "separate and apart" from the parties' Agreement, iSatori's factual averments demonstrate that the parties' private-label production Agreement was the foundation for, and basis of, the relationship between Protica and iSatori.

Thus, absent some factual allegations suggesting a non-contractual duty upon Protica to disclose the February 2009 recall of two lots of New Whey, it appears that the parties' contract is the sole basis for Protica's alleged duty to disclose.[38]  For those reasons, I cannot conclude, or reasonably

---

[37]     See Amended Counterclaim at ¶¶ 51-54.

[38]     The United States Court of Appeals for the Third Circuit has noted that Pennsylvania courts analyzing whether there was a duty to speak rely almost exclusively on the nature of the contract between the parties and the scope of one party's reliance on the other's representations.  Duquesne Light Company v. Westinghouse Electric Corporation, 66 F.3d 604, 612 (3d Cir. 1995).

infer, that iSatori's fraudulent concealment claim arose independently of the parties' Agreement.

Because the alleged fraudulent concealment is not independent of the Agreement, Pennsylvania's economic loss doctrine bars iSatori from recovering in tort under Count IV of the Amended Counterclaim.  See Wulf, 798 F.Supp.2d at 597; Sarsfield, 707 F.Supp.2d at 553; Ferki, 2010 WL 5174406, at *10. Therefore, I grant Protica's motion and dismiss iSatori's fraudulent concealment claim asserted in Count IV of its Amended Counterclaim.[39]

### Gist-of-the-Action Doctrine

Protica contends that iSatori's fraudulent concealment counterclaim is nothing more than an allegation that Protica fraudulently performed its duties under the contract by failing

---

[39]    In its surreply, iSatori asserts that

> even if the gist of the action and/or the economic loss doctrine were to bar a party from proceeding simultaneously on breach of contract and tort claims, the court should not dismiss such claim under these doctrines in the early stages of the litigation, regardless of their consistency, because a party is permitted to plead both claims as alternative theories of liability pursuant to Fed.R.Civ.P. 8(d)(2).

(iSatori Technologies, LLC's Surreply at page 5.)

This assertion is inconsistent with the Third Circuit's decision in Werwinski, which affirmed the district court's dismissal of a the plaintiff's fraudulent concealment claim pursuant to Pennsylvania's economic loss doctrine.  In Werwinski, as here, a fraudulent concealment claims was asserted together with claims for breach of express and implied warranties. See Werwinski, 286 F.3d at 664-665, 681.  Dismissal pursuant to Rule 12(b)(6) is proper where the allegations in a party's pleading do not demonstrate a plausible entitlement to the relief requested.  Here, as discussed previously, iSatori's fraudulent concealment counterclaim is barred by the economic loss doctrine and dismissal on that basis is appropriate.  See Id.

to inform iSatori about Protica's February 2009 voluntary recall of two lots of IDS Sports New Whey.[40]  iSatori avers that Protica initiated the February 2009 New Whey recall "after a routine quality inspection revealed a [utility knife] blade in one of the containers".[41]

Protica contends that because iSatori alleges fraudulent concealment in the course of Protica's performance of the Agreement and the breach of a contractual duty, the gist or gravamen of Count IV sounds in contract and not in tort.[42] Protica seeks dismissal of Count IV of iSatori's Amended Counterclaim on the grounds that iSatori's fraudulent concealment claim was barred by Pennsylvania's gist-of-the-action doctrine.

Because, as discussed above, iSatori has not plead facts sufficient to state a claim for fraudulent concealment and iSatori's fraudulent concealment claim is barred by Pennsylvania's economic loss doctrine, I do not reach Protica's gist-of-the-action argument.

<u>CONCLUSION</u>

For each of the foregoing reasons, I grant Protica's motion and dismiss iSatori's fraudulent concealment claim asserted in Count IV of the Amended Counterclaim.

---

[40]     Memorandum of Law in Support at pages 8-9.

[41]     Amended Counterclaim at ¶ 21.

[42]     Memorandum of Law in Support at page 9.